

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00169-CR

JEMILLE SHIMAR MCAFEE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 22-0050X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Harrison County jury convicted Jemille Shimar McAfee of possession with intent to deliver a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams.[1]  After his punishment was enhanced by a prior felony conviction,[2] McAfee was sentenced to thirty-five years' imprisonment.  On appeal, McAfee challenges the sufficiency of the evidence supporting his conviction.  Because we find sufficient evidence supports the jury's finding, we affirm the trial court's judgment.

I.      The Evidence at Trial

Marshall Police Department Officers Caleb Caldwell and Timothy Sipes responded to a domestic disturbance dispatch at the home of Krisshna Royal on the night of October 22, 2021.  Initially, the officers made contact with Royal's mother, who reported that things had calmed down.  When they made contact with Royal, she also declined their help.

As the officers left, they shined their flashlights into a gold-colored Honda in the driveway and observed a clear plastic bag on the center console that contained twenty-seven smaller plastic bags with a white, rocklike substance inside that appeared to be crack cocaine.  Officer Caldwell asked whose vehicle it was, and McAfee responded that it was his.  Caldwell detained McAfee in handcuffs, placed him in his patrol car, and continued his investigation.  McAfee then denied that the vehicle was his and denied that he had the keys to the car.  However, during Caldwell's search of McAfee, he found multiple keys in his pockets, one of

_____

[1]See TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).

[2]See TEX. PENAL CODE ANN. § 12.42(c)(1).

which was the ignition key to the vehicle.[3]  McAfee also denied that he had been in the vehicle[4] and claimed that he had driven a different vehicle.  Officer Sipes testified that McAfee became excited and worked up when the officers took an interest in the Honda.  Caldwell described McAfee's behavior as anxious, nervous, hostile, and panicky.

In the passenger seat of the vehicle, the officers also found McAfee's wallet, his Texas state identification card, and two cell phones that McAfee said belonged to him.  McAfee also claimed that $150.00 found in the center console was his money.

A forensic scientist with a Texas Department of Public Safety Crime Laboratory determined that there were twenty-seven smaller plastic bags that contained cocaine in the aggregate amount of 4.14 grams.  Officer Caldwell testified that, if someone possesses cocaine for personal use, they will generally have only one or two packets of crack cocaine.  He also testified that he arrested McAfee for possession with intent to deliver, because, based on his training and experience, the number of individual packets of cocaine found indicated someone possessed it with the intent to deliver.

Royal testified that she was in a relationship with McAfee and that he was living with her on October 22, 2021.  Royal testified that she drove the Honda to pick up her son at school around 3:10 that afternoon and that McAfee went with her.  She did not see any illegal drugs or narcotics in the vehicle at that time.  When they returned home, McAfee left in his Chrysler, and

---

[3]No contraband was found on McAfee's person.

[4]Later, McAfee stated that the vehicle was titled in his mother's name.  A license plate check on the vehicle revealed that it was registered to Sabrina McAfee.

Royal drove her vehicle[5] to Kroger's and was gone for two or three hours. Royal testified that, after she returned home, McAfee returned in the Chrysler and that she did not see him get back in the Honda. Royal also testified that she did not know where McAfee was for a period of time.

## II.    Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

---

[5]Royal denied that she owned the Honda and testified that she owned another vehicle.

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

## III.    Analysis

Under the indictment and the applicable statute, to sustain a conviction, the State had to show, beyond a reasonable doubt, that McAfee (1) knowingly possessed, (2) with intent to

5

deliver, (3) a controlled substance, cocaine, (4) in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (a), (d). McAfee only contends that the evidence was insufficient to show that he knowingly possessed the cocaine.[6]

"'Possession' means actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). Possession "is established by showing that [McAfee] exercised control, custody, management, or care over the drugs and that he knew the matter possessed was contraband." *Hutchison v. State*, 424 S.W.3d 164, 170 (Tex. App.—Texarkana 2014, no pet.) (citing *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006)). "When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). Although "[m]ere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs," "[p]resence or proximity to drugs . . . when

---

[6]Although McAfee's sole issue purports to challenge the sufficiency of the evidence to support a conviction for possession of a controlled substance with *intent to deliver*, the substance of his brief only analyzes the sufficiency of the evidence that he knowingly *possessed* a controlled substance. In regard to intent to deliver, he provides, at best, a cursory citation to relevant authority with scant if any analysis of the evidence relevant specifically to intent to deliver. *See Biggers v. State*, 634 S.W.3d 244, 253 (Tex. App.—Texarkana 2021, pet. ref'd). "To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. R. APP. P. 38.1(i)). "Because the Texas Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance." *Id.* (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). As a result, to the extent McAfee challenges the sufficiency of the evidence supporting a finding of intent to deliver, this issue has been forfeited. In any case, the evidence showed that over four grams of cocaine were packaged in twenty-seven individual packets. Officer Caldwell gave expert testimony that a person who possesses cocaine for his personal use generally has only one or two packets, but that a person who possesses the number of packets found in the Honda possesses it with intent to deliver. .

combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion." *Id.* (citing *Evans*, 202 S.W.3d at 162).

The following links are recognized as tending to show a person's possession of contraband:

> (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Id.* at 170–71 (citing *Wright v. State*, 401 S.W.3d 813, 818–19 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Evans*, 202 S.W.3d at 162 n.12).

McAfee points out that some of these links are not present in this case, including (1) that he was not in or near the Honda when the drugs were discovered, (2) that he was not under the influence of drugs, (3) that he did not have any drugs on his person, (4) that there was no paraphernalia present, (5) that he did not attempt to flee, and (6) that he did not have a large sum of cash. He also offers alternative explanations for the presence of any links that did exist. However, "[t]he number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance." *Id.* at 172. Further, while the "defendant must still be affirmatively linked with the drugs he allegedly possessed," the link need not "be so

7

strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt." *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995).

The evidence showed that the Honda was parked in the driveway of the house that McAfee occupied. The officers observed the drugs in plain view on the center console of the Honda. When they inquired who owned the vehicle, McAfee acknowledged that it was his. After he realized why the officers inquired about the vehicle, he immediately denied that the vehicle was his, denied that he had been in the vehicle, denied that he had the keys to it, and became nervous and hostile. Nevertheless, the keys to the vehicle were found in McAfee's pocket, and his wallet, his Texas state identification card, and two cell phones, which he admitted belonged to him, were discovered on the passenger's seat of the vehicle. McAfee also asserted that the $150.00 found in the console of the vehicle belonged to him. Eventually, McAfee also acknowledged that the vehicle was registered to his mother.

The presence of the cocaine in plain view in a vehicle parked in the driveway of a house that McAfee occupied, along with McAfee's initial admission that the vehicle belonged to him, his possession of the keys to the vehicle, and the presence of his wallet, state identification card, and other personal items in close vicinity to the cocaine showed that he had a right to possess the Honda in which the cocaine was found, that he had access to the cocaine, and that he made an initially incriminating statement. Further, his nervous and hostile conduct and his repeated lies concerning his relationship to the vehicle after he realized the cocaine had been discovered[7]

___

[7]A jury may consider a defendant's lies to law enforcement as evidence of guilt. *See Williams v. State*, No. 06-20-00024-CR, 2020 WL 6929903, at *5 (Tex. App.—Texarkana Nov. 25, 2020, pet. ref'd) (mem. op., not designated for publication); *Woodruff v. State*, 330 S.W.3d 709, 723 (Tex. App.—Texarkana 2010, pet. ref'd)).

indicated a consciousness of guilt. This evidence was sufficient to affirmatively link McAfee to the cocaine.

Based on this evidence, a rational jury could have found beyond a reasonable doubt that McAfee knowingly possessed the cocaine.[8] As a result, we find that sufficient evidence supports the jury's finding that McAfee knowingly possessed the cocaine. We overrule McAfee's sole issue.

## IV. Disposition

For the reasons stated, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: June 16, 2023
Date Decided: July 11, 2023

Do Not Publish

---

[8]Royal testified that there were no illegal drugs in the Honda when McAfee accompanied her to pick up her son earlier that day and that McAfee left in a Chrysler when they returned home. However, Royal also testified that she left home in a different car for several hours and that she did not know where McAfee had been. The jury, as the sole judge of Royal's credibility, could believe or not believe all or part of her testimony.