

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00007-CR

_____

BRANDON GABRIEL CHAPPELL, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-21-27961

_____

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Fannin County jury convicted Brandon Gabriel Chappell of aggravated sexual assault of a child. In accordance with the jury's assessment, the trial court sentenced Chappell to thirteen years' imprisonment and ordered him to pay a $10,000.00 fine. On appeal, Chappell argues that the trial court abused its discretion by excluding text messages allegedly relevant to his defensive theory and by admitting the victim's forensic interview. Chappell also raises a point arguing cumulative error.

We find that Chappell abandoned his request to introduce most of the text messages, that the trial court did not err by excluding the remaining text messages, and that Chappell cannot show that he was harmed by the admission of the victim's forensic interview. We also overrule Chappell's multifarious cumulative error complaint. As a result, we affirm the trial court's judgment.

I.      Factual Background

The child victim, Naomi, was seventeen at the time of trial.[1] Naomi testified that she lived with her mother, Heather, her younger brothers, Leon and Zeb, and Chappell. Naomi said that Chappell "was always angry," and Naomi feared him because Chappell would hit her and her mother. She described instances of sexual abuse while living in other states. Naomi testified that she first became scared of Chappell while living in Arkansas after he came into her bedroom

---

[1]To protect the identity of the child victim, we use pseudonyms for the child and her family. *See* TEX. R. APP. P. 9.10(a)(3).

while she was asleep and woke her by "touching around [her] vagina" on top of her clothing.[2] After a move to Oklahoma, Naomi remembered that Chappell placed his finger in her vagina and that it felt "nasty" and "gross."

When Naomi was eleven, she and her family moved with Chappell to Leonard, Texas, to be closer to Chappell's biological daughter, Jacklyn.[3] Naomi testified that Chappell continued coming into her bedroom "late at night" to "touch over [her] clothes, or . . . would just go through [her] shorts and rub [her] vagina." According to Naomi, the inappropriate touching occurred from the time she turned eight years old until she was twelve. Naomi said she would lay with Chappell in his bed while her mother was at night school and that, on one occasion, Chappell tried to take her pants off while she was asleep with him. Naomi said she "got really scared" because Chappell "had never taken off [her] pants" since he would "just go through [her] shorts" and underwear and, as a result, she told Heather that something inappropriate happened.

Heather testified that Naomi's report came right after Chappell had pulled her out from cheerleading. Chappell overheard Naomi's report and came out to meet them. According to Heather, "[Chappell] started crying, and he . . . looked at [Naomi]. And he said, [y]ou know I would never do that to you." Heather testified that she was going to call the police but hung up the phone after Naomi immediately recanted by saying, "No, he didn't do that." Heather and Naomi both testified that Chappell admitted that he had touched Naomi while in the master

---

[2]No other touching occurred while Naomi lived in Arkansas.

[3]Naomi said it "was a difficult time in [her] life" because Chappell treated Jacklyn "better than [her] and [her] brothers" and because Heather and Chappell fought often.

bedroom, but said it was because he mistook Naomi for Heather as he was waking up.[4] Naomi also testified that Chappell said the medications he received from a veteran's affairs hospital for post-traumatic stress disorder made him "sleepwalk" and touch her. Because Naomi had previously told Heather that she would wake to find Chappell in her bedroom, Heather decided to leave Chappell, who was abusive, despite Naomi's recantation.

The evidence showed that Leon and Zeb continued to live with Chappell while Naomi moved in with her grandparents and then later with Heather, who began dating and living with a man named Guy. During that time, Naomi called, texted, and visited Chappell because her siblings lived with him and she "wanted to be a part of their lives." Naomi said she continued to tell Chappell that she loved him because "[h]e still raised [her]."

Naomi said she was desperate to get away from Guy. She testified that she texted Chappell to notify him that she wanted to leave Heather's house and wished instead to live with Chappell or Jacklyn and her mother, Samantha. Heather and Chappell both told Naomi that they were not going to allow her to move in with Jacklyn and Samantha. Naomi told Chappell she was going to move out anyway and, eight days later, Naomi made an outcry of sexual abuse against Chappell to Samantha, who called Child Protective Services (CPS).

The evidence showed that Naomi again recanted her allegations. Leon and Zeb both testified that Naomi told them she had made up allegations of sexual abuse against Chappell because she wanted Heather and Chappell to remain separated. Leon added that Naomi did not

---

[4]Heather testified that she "weighed between 160 and 180 pounds" and "Naomi weighed about 89 pounds, 90 pounds." Naomi testified that it would be hard to mistake her for her mother given the difference in their size.

seem serious about her allegations. Naomi's grandmother, Martha, also testified that Naomi recanted, possibly for "fear of what might happen" if she came forward.

After CPS became involved, fifteen-year-old Naomi was interviewed by Mandi Bruso, then director of the Fannin County Children's Advocacy Center (CAC). After counsel cross-examined Naomi, the State introduced the CAC recorded interview. During her interview, Naomi said that Chappell had sexually assaulted her and first started to touch her inappropriately when she lived in Arkansas. Naomi said that, after moving to Oklahoma, Chappell would come into her bedroom and would insert his finger into her vagina while she pretended to be asleep. Naomi told Bruso that, after they moved to Leonard, Chappell made her sleep in his bed when her mother was not there and would slap or spank her if she did not kiss him on the mouth. Naomi said that Chappell would go underneath her clothing to touch her but tried to pull down her pants in Leonard, which led to Naomi making an outcry to Heather. According to Naomi, Chappell told Heather that he accidentally touched Naomi because his medication confused him into believing that Heather was in the bed with him. Naomi told Bruso that Heather believed Chappell and encouraged Naomi to lie by saying she fabricated the allegation to get her cell phone back.

Naomi said that Heather left her when she was thirteen, dropped her off at her grandparent's house, and allowed Leon and Zeb to move in with Campbell. Naomi also told Bruso that Chappell and Heather were both abusive toward her and that she told her grandparents about Chappell's sexual abuse, but they did nothing. She was later forced to move in with Heather and Guy, who allegedly used marihuana. At the time of the interview, Naomi told

5

Bruso that she had moved out of Heather's house, was living with her grandparents, but wished to live with Jacklyn and Samantha. When asked if she had anything else to tell Bruso, Naomi said that Leon and Zeb would lie for Chappell because they enjoyed living with him and because he let them do what they wanted. When Bruso asked if Chappell was abusing anyone else, Naomi said she was unaware of Chappell sexually abusing anyone else but feared that he could be abusing Zeb, though she had no proof.

Marco Robles, an officer with the Leonard Police Department, watched the CAC interview and decided to interrogate Chappell. In his recorded interview, Chappell said that Naomi made up allegations against him or allegations of drug abuse against Heather every time she was grounded, had her cell phone confiscated, or did not get her way. Chappell told Robles that Naomi had created the newest allegations because she was not allowed to live with Samantha, who had no rules for Jacklyn or Naomi. Even so, Chappell admitted that, while waking up after taking prescribed sleeping pills to treat his post-traumatic stress disorder, he had accidentally reached over in his bed for Heather but had touched Naomi's breasts on one occasion and her bottom on another, over Naomi's clothing. Aside from those two incidents, which Chappell said were accidents, he denied any inappropriate touching or sexual assault.

After hearing all the evidence, the jury found Chappell guilty of aggravated sexual assault of Naomi.

## II.     Standard of Review

Chappell's non-multifarious points of error complain of the trial court's evidentiary rulings. "We review a trial court's decision to admit or exclude evidence for an abuse of

6

discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

## III. The Trial Court Did Not Abuse its Discretion by Overruling Chappell's Preserved Complaints About Excluded Text Messages

In his first point of error, Chappell argues that the trial court erred by excluding voluminous text messages between Naomi and Chappell. We find that Chappell abandoned his requests with respect to most of the text messages and that the trial court did not err in excluding the remaining messages.

### A. Chappell Abandoned His Requests with Respect to Most of the Messages

During trial, Chappell initially stated that he wished to introduce "hundreds of pages of text messages" between Naomi and Chappell for the purpose of showing that she desperately wished to leave Heather's house and fabricated the outcry to accomplish that end. The State responded that it did not understand how fabricating an allegation against Chappell would have helped her to leave Heather's house. The State objected to the introduction of the text messages on the grounds that they were irrelevant and would confuse the jury. After the defense argued that the messages addressed Naomi's credibility because the allegation occurred after Chappell

7

and Heather said Naomi could not live with Samantha, the trial court said it would not admit the evidence.

Yet, the trial court later found that the State had opened the door to the introduction of this evidence after showing Naomi's recorded CAC interview. Chappell abandoned his complaint when his counsel later said,

> I frankly wasn't going to offer [the text messages]. I was going to ask [Naomi] questions, and if she denied it, then I would show her the text message. . . . If the State wants me to offer it, I'm offering it, but I really wasn't intending it -- to do it that way.

The trial court then issued a "pre-ruling," saying it would allow evidence (1) that Naomi wanted Chappell to call CPS on Heather and Guy, (2) that she sought Chappell's assistance to move in with Jacklyn and Samantha, (3) that Naomi wished to live with Chappell, and (4) of any "affectionate text messages . . . [indicating] positive feelings toward the Defendant." Therefore, the trial court reconsidered its prior ruling, keeping out only the evidence that Naomi wished to be emancipated.

During cross-examination, Chappell questioned Naomi at length about the substance of her text messages. Through this questioning, Chappell established that Naomi told him she loved him, wanted to leave Heather's house, wished to live with Chappell or Samantha, and that her requests to move were denied shortly before her outcry to Samantha. When Chappell showed that Naomi wished for him to pick her up, the State objected on the ground that there was "no context behind [those] text messages." Chappell responded that he was "happy to offer them," but the State's objection was overruled, Chappell continued his questioning, and the text messages were not offered after the trial court had reconsidered its initial ruling.

8

An adverse ruling is required to preserve error in an evidentiary ruling. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Our review of the transcript shows that the trial court reconsidered its initial ruling on the text messages, except for the legal issue of emancipation, after finding that the State had opened the door to them. Even so, Chappell abandoned his request to admit the text messages into evidence and instead chose to question Naomi about them. As a result, Chappell admits in his brief that "[t]he trial court did allow Appellant to present some of the proffered evidence." Due to the trial court's reconsideration, we find that Chappell did not secure an adverse ruling on the admissibility of text messages, except for those involving emancipation. As a result, we find Chappell's complaints about the exclusion of text messages unpreserved except for the messages involving emancipation.

### B. The Trial Court Did Not Err by Excluding Messages Involving Emancipation

As for the text messages on emancipation, we find that the trial court did not abuse its discretion in excluding this evidence.[5] Chappell wanted to introduce messages showing that Naomi wished to be emancipated from Heather. We find those text messages irrelevant.

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." TEX. R. EVID. 401. The record established that Chappell was not Naomi's biological father and that Naomi did not live with Chappell during the time of the text messages. In light of the fact that it allowed Chappell to show that Naomi asked to live with him or Samantha before

---

[5]The trial court indicated that it would not allow discussion of emancipation because "the child clearly doesn't know what's involved there." After the trial court clarified that Chappell could introduce evidence that Naomi wished to live with either Chappell or Samantha but not evidence of emancipation, Chappell's counsel said, "I'm okay with emancipation." Even so, we do not find this issue unequivocally waived.

her outcry to Samantha, the trial court found that the messages showing that Naomi wished to be legally emancipated from Heather were irrelevant because they had no tendency to make the allegations of sexual assault by Chappell more or less probable and had no bearing on the issue of her credibility. We agree. As a result, we find that the trial court did not abuse its discretion by excluding the text messages about emancipation.[6]

We overrule Chappell's first point of error.

## IV. Chappell Was Not Harmed by the Admission of the Recorded CAC Interview

During his opening statement, Chappell accused Naomi of fabricating "a claim" and later "retract[ing] some of the things that [she had] claimed were going on." The State presented Naomi as a witness in its case-in-chief but did not seek to introduce the CAC interview recording during her testimony. On cross-examination, in an apparent effort to discredit her testimony, counsel questioned Naomi about her motives to fabricate an outcry and cross-examined her about her recantations.

To rebut Chappell's charge of fabrication, the State sought to introduce the CAC interview. Chappell objected to the introduction of the recording on the grounds that it constituted hearsay and, even though Naomi was available at trial, violated his Confrontation

---

[6]In his harm analysis, Chappell argues that "[t]he excluded evidence was significant to Appellant's defensive theory that [Naomi] was motivated to make false allegations against him because Appellant did not permit or help her to achieve her most desired goal [of moving away from Heather]." The record shows that Chappell developed this defensive theory at trial and was able to show that Naomi had requested to live with him several days before her CAC interview.

10

Clause rights. In his second point of error on appeal, Chappell argues that the trial court erred by overruling his hearsay objection.[7]

"Rule 801(e)(1)(B) gives substantive, non-hearsay status to prior consistent statements of a witness 'offered to rebut an express or implied charge . . . [of] recent[] fabricat[ion] . . . [or] . . . improper influence or motive.'" *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (quoting TEX. R. EVID. 801(e)(1)(B)). For a prior consistent statement to be admissible the following four elements must be met:

(1)     the declarant must testify at trial and be subject to cross-examination;

(2)     there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent;

(3)     the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and,

(4)     the prior consistent statement must be made *prior* to the time that the supposed motive to falsify arose.

*Id.* (emphasis added) (citing *Tome v. United States*, 513 U.S. 150, 156–58 (1995)). Since Chappell introduced evidence showing that the alleged motive to fabricate the allegations against him arose before the CAC interview, he argues that the trial court erred by admitting it under Rule 801(e)(1)(B)'s hearsay exception.

Even assuming error, we find that Chappell cannot show that he was harmed by the admission of the CAC interview. First, "erroneously admitt[ed] evidence 'will not result in

[7]Chappell does not argue Confrontation Clause grounds in his brief. Instead, Chappell argues that the recording should not have been admitted because it contained evidence of extraneous-offense evidence. Because Chappell's point of error related to extraneous-offense evidence was not presented at trial, we find that he failed to preserve this issue since a "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005).

11

reversal when'" substantially similar evidence is admitted "without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). The record shows that many of Naomi's statements on the CAC interview, particularly the statements describing Chappell's sexual abuse of Naomi, were cumulative of the testimony already before the jury. Although Chappell argues that the CAC interview contained specific references of domestic abuse toward Heather and physical abuse toward Naomi, both Naomi and Heather had already testified that Chappell was abusive toward them.

Second, we review allegedly erroneous admission of non-cumulative evidence heard on the CAC interview for non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Under this standard, we will not overturn a criminal conviction if, "after examining the record as whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Here, Chappell argues that he was harmed by "references to the idea that [he] was also abusing . . . [Zeb]." Yet, Naomi's CAC interview showed that she had not heard that Chappell had sexually abused anyone else but her. Although she was concerned for Zeb, Naomi did not say that Chappell had sexually abused him.

Keeping in mind that "[t]he testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault," we have fair assurance that the portion of Naomi's CAC interview related to Zeb had no influence on the jury. *Scott v. State*, 202 S.W.3d 405, 408

12

(Tex. App.—Texarkana 2006, pet. ref'd). The jury charge focused the jury on conduct committed against Naomi. Aside from Naomi's speculation during her CAC interview, there was no evidence showing that Chappell had sexually abused Zeb. In fact, Zeb testified in Chappell's favor at trial and said that Naomi had made up the allegations against Chappell. Also, the State did not mention any allegation against Zeb during closing argument. As a result, we assume that the jury followed the trial court's instruction to refrain from considering any extraneous-offense evidence unless it found that the act was committed beyond a reasonable doubt. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented."). Instead, we conclude that the jury followed the trial court's instructions to "not consider this [extraneous-offense] evidence as proof of the offense charged in the indictment, if any."

Under the unique facts of this case, we find that Chappell was not harmed by the admission of the CAC interview. As a result, we overrule his second point of error.

## V. We Overrule Chappell's Multifarious Cumulative Error Complaints

In his third point of error, Chappell raises cumulative error. Within that point, Chappell (1) complains of a Sexual Assault Nurse Examination (SANE) report that was not offered into evidence; (2) raises several grounds for ineffective assistance, including that counsel failed to object to extraneous-offense evidence on the CAC recording, failed to object to extraneous-offense evidence that Chappell committed acts of family violence, and failed to object to an allegedly improper Allen charge on punishment; and (3) complains that the verdict was not unanimous.

13

"To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (quoting TEX. R. APP. P. 38.1(i)); *see Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). "Because the Texas Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance." *Taylor*, 558 S.W.3d at 218 (citing *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673).

"To avoid forfeiture, a party must provide substantive analysis by applying the law to the facts." *Id.* (citing *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal to grant petition for discretionary review)). "A brief that fails to apply the law to the facts does not comply with Rule 38.1 and presents nothing for review." *Id.* (citing *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003)).

We overrule Chappell's multifarious cumulative error complaints because they are inadequately briefed. First, the SANE report was not offered into evidence and, as a result, the brief fails to criticize any action or inaction by the trial court. As for Chappell's ineffective assistance claims, they are inadequately briefed since Chappell fails to cite or apply the relevant *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (To show ineffective assistance, a defendant must prove (1) that his trial "counsel's performance was

14

deficient" and (2) "that the deficient performance prejudiced [him]."). As for the complaint of a non-unanimous verdict, the subject was raised by a motion for new trial, but Chappell does not apply the proper abuse of discretion standard or argue that the trial court abused its discretion by overruling the motion for new trial. *See State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017).

We overrule Chappell's last point of error.

## VI.    Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice


Date Submitted:     July 17, 2023
Date Decided:       August 4, 2023

Do Not Publish

15