

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00215-CR

_____

JARROD MICHAEL TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2017F00159

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# OPINION

After a jury convicted Jarrod Michael Taylor of sexual assault of a child, the trial court sentenced him to twenty years' imprisonment.[1] On appeal, Taylor contends, in a conclusory manner, that the evidence is legally insufficient to support the jury's verdict of guilt. Taylor also argues that the trial court erred in failing to excuse a juror who knew the victim and in denying his request for an instruction on the affirmative defense of insanity. Because we conclude that Taylor failed to adequately brief his first point of error, cannot demonstrate error in the trial court's decision to retain the juror, and raised no evidence entitling him to an instruction on the defense of insanity, we affirm the trial court's judgment.

## I. Factual Background

The State filed nine separate indictments against Taylor for his improper sexual relationship with Tara Jones' fourteen-year-old daughter, Cindy Jones.[2] In his consolidated trial, Tara testified that she discovered Cindy's relationship with thirty-two-year-old Taylor when she confiscated Cindy's cell phone and read several lewd text-message exchanges between Taylor and her child. Tara surrendered the cell phone to local law enforcement officers who extracted 1,692 text messages between Taylor and Cindy.

The text messages from Cindy's cell phone revealed that Taylor had sent at least fourteen photographs of his penis and two recordings of himself masturbating, asked Cindy if she desired

---

[1]Taylor also appeals from his convictions for (1) six counts of online solicitation of a minor in companion cause numbers 06-17-00216-CR through 06-17-00221-CR and (2) two counts of indecency with a child by contact in companion cause numbers 06-17-00222-CR and 06-17-00223-CR.

[2]We will use a pseudonym for the victim and her mother to protect the victim's identity in this case. *See* TEX. R. APP. P. 9.8.

to engage in sexual contact with him, expressed his wish to see her privates, and engaged in numerous other conversations of a sexual nature with the child. Cindy testified that after several of the explicit text-message exchanges, she agreed to meet with Taylor in person. She informed the jury that Taylor walked her into nearby woods where he touched her breasts and vagina under her clothing, forced her to touch his penis, and penetrated her vagina with his fingers and penis. Afterward, Taylor sent text messages to Cindy describing the encounter and his enjoyment of the sexual acts.

Taylor then sent the following series of text messages, acknowledging his wrongdoing: "I wish we was in the old days where a guy could have a girl as young like you, you know, and no one cared"; "Now a guy can get into trouble by even thinking about getting with . . . a young girl. . . . But I can't help the way I feel about you, baby"; "a part of me wants to keep doing what we've been doing, you know, but it's so hard for us"; "Have you been delete [sic] everything we say on here, baby . . . . Just looking after you, baby." Sabrina Sartor, an investigator with the Cass County Sheriff's Department, testified that Taylor "understood what he'd done because he stated multiple times that he knew what he did was wrong" during his recorded interview.

## II.    Taylor's First Point of Error Is Inadequately Briefed

To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *see Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). Because the Texas Court of

3

Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant, encompassed within Rule 38.1 is the party's task of explaining or discussing why an argument has substance. *See Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017); *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673.

To avoid forfeiture, a party must provide substantive analysis by applying the law to the facts. *Linney v. State*, 413 S.W.3d 766, 767 (Tex. Crim. App. 2013) (Cochran, J., concurring in refusal to grant petition for discretionary review). A brief that fails to apply the law to the facts does not comply with Rule 38.1 and presents nothing for review. *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003). These rules apply equally to a defendant's contention that the evidence is legally insufficient to support his conviction. *Serrano v. State*, No. 03-15-00654-CR, 2017 WL 4228717, at *7–8 (Tex. App.—Austin Sept. 21, 2017, pet. ref'd) (mem. op., not designated for publication); *Moore v. State*, Nos. 10-10-00372-CR & 10-10-00373-CR, 2012 WL 1997033, at *1 n.1 (Tex. App.—Waco May 30, 2012, pets. ref'd) (mem. op., not designated for publication); *Avalos v. State*, No. 08-08-00272-CR, 2010 WL 2297878, at *2 (Tex. App.—El Paso June 9, 2010, pet. ref'd) (not designated for publication); *Barrera v. State*, No. 01-03-00102-CR, 2004 WL 637954, at *2 (Tex. App.—Houston [1st Dist.] Apr. 1, 2004, no pet.) (mem. op., not designated for publication).[3]

---

[3]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

Instead of complying with Rule 38.1, Taylor summarily asserts in his first point of error on appeal that the evidence is legally and factually[4] insufficient to support the jury's finding of guilt. Taylor's brief fails to include any analysis, argument, or citation to the record in support of his contention that the evidence is insufficient to support his conviction. He does not identify which of the offense elements is lacking evidentiary support and omits any discussion about how the evidence adduced at trial fails to satisfy the State's burden of proof. *See Serrano*, 2017 WL 4228717, at *7–8. Because Taylor's conclusory argument presents nothing for review, we overrule his first point of error.

## III. The Trial Court Did Not Err In Failing to Excuse a Juror Who Knew the Victim

In his next point of error, Taylor argues that the trial court failed to excuse Twyla Davis, a juror who knew the victim. During voir dire, neither the State nor the defense asked the jury panel whether they knew Cindy, and both parties referred to Cindy by her pseudonym. Following voir dire, the jury was seated and sworn. During a lunch recess (but before any testimony was taken), Davis informed the trial court that "she ha[d] seen somebody in the hall . . . and ha[d] indicated some kind of issue about whether or not that [was] somebody that [gave] her some concern about serving on [the] jury." Davis informed the trial court that she knew Cindy and did not realize that she was the victim in the case. When the trial court asked Davis if knowing Cindy

---

[4]In *Brooks*, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia*[, 443 U.S. 307 (1979),] legal-sufficiency standard and the *Clewis* [*v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996),] factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we no longer perform factual sufficiency reviews. *See Hutchings v. State*, 333 S.W.3d 917, 919 n.2 (Tex. App.—Texarkana 2011, pet. ref'd).

would prevent her from serving as a juror, Davis replied, "I don't think so." The trial court then provided Taylor with an opportunity to question Davis.

During Davis' questioning, the trial court learned that Davis was Cindy's third grade teacher, that Cindy remained in Davis' classroom for one-half of each school day in the third grade, and that Cindy was currently in the eighth grade. After Davis reiterated her belief that she could be a fair juror, Taylor engaged in the following discussion with Davis:

> Q.    You're not going to have any feelings for Cindy Jones, based upon the year that you were with her?
>
> A.    Persuade my opinion, no, because I have very strong convictions. Well, I mean, my beliefs.
>
> Q.    What are those beliefs?
>
> A.    That -- and I stood up and stated it earlier. You know, in life, there are consequences for everything you do, right or wrong, good or bad, and that's what I stick by, but it doesn't have anything to do with me knowing [Cindy].

Davis also informed the trial court that she knew Tara, but that she was merely an acquaintance whom she saw occasionally at the Walmart where Tara worked.[5] At the end of the discussion, counsel asked, "And you think you can set aside this year-long relationship with an 8[-]year-old student and be a fair juror when . . . she is alleging that she was sexually assaulted?" Again, Davis replied, "I think I could." The trial court overruled Taylor's request to "strike" Davis and seat the alternate juror in her place.

---

[5]The record establishes that Taylor only asked one juror who worked at Walmart—not Davis or other members of the panel—whether that juror knew Tara. Consequently, Davis did not volunteer that she knew Tara as an acquaintance at Walmart.

6

On appeal, Taylor argues that Davis "concealed her relationship with Cindy Jones during voir dire and lied in order to be seated on the jury," that he had exhausted all peremptory challenges, and that allowing Davis to remain on the jury deprived him of his right to an impartial jury. In *Scott v. State*, we summarized the standards relevant to a determination on this matter as follows:

> 1. "Where a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." *Salazar* [*v. State*], 562 S.W.2d [480,] . . . 482 [(Tex. Crim. App. 1978)].
>
> 2. "[T]he defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant." *Franklin* [*v. State*], 138 S.W.3d [351,] . . . 355–56 [(Tex. Crim. App. 2004)].
>
> 3. "[T]he good faith of a juror is largely irrelevant when considering the materiality of information withheld." *Franklin*, 12 S.W.3d at 478.
>
> 4. Although the defendant is not required to show actual bias, the information concealed by the veniremember must possess a tendency to show bias. *Franklin*, 138 S.W.3d at 356; *see* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006).[6]
>
> 5. A defendant must establish both that error took place and that the error resulted in harm. *Gonzales v. State*, 3 S.W.3d 915, 917 n. 2 (Tex. Crim. App. 1999). Only if error resulted in harm would a new trial be warranted. *Id*.; *see Lucero v. State*, 246 S.W.3d 86, 95 (Tex. Crim. App. 2008) . . . .

*Scott v. State*, 419 S.W.3d 698, 702 (Tex. App.—Texarkana 2013, no pet.) (footnote omitted).

A juror is statutorily excluded when she "has a bias or prejudice in favor of or against the defendant." TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Here, Taylor asserts that

---

[6]*See Uranga v. State*, 330 S.W.3d 301, 307 (Tex. Crim. App. 2010) (where a trial court holds a hearing in which the defendant has an opportunity to prove actual bias, "the standard of appellate review [is] whether the trial court abused its discretion on the factual issue of actual bias").

Davis concealed her relationship with Cindy in order to be seated on the jury. Nothing in the record supports this contention. In fact, the record demonstrates Taylor's candor since (1) both parties used Cindy's pseudonym during voir dire and (2) neither party asked the venire whether they knew Cindy. Furthermore, the Texas Supreme Court has refused to recognize an implied bias on the part of a juror. *Uranga*, 330 S.W.3d at 306–07 (reasoning that Texas does not recognize the implied bias doctrine because "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias"). The record reveals (1) that Davis did not seek to conceal her relationship with Cindy, but instead informed the court of that relationship at the earliest opportunity, (2) that the trial court provided Taylor with an opportunity to demonstrate bias, and (3) that questioning of Davis failed to demonstrate that she had a bias or prejudice in favor of or against the defendant which would statutorily require her exclusion from service.

In any event, the Texas Court of Criminal Appeals has stated that when "the jury had been sworn and the trial had begun, the appellant's only remedy was a mistrial; defense counsel could not have moved to challenge the juror for cause or to peremptorily strike the juror." *Franklin v. State*, 138 S.W.3d 351, 353–54 (Tex. Crim. App. 2004). The record shows that Taylor did not move for a mistrial. *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (timely motion for mistrial is required to preserve error on appeal).

We find that Taylor has failed to demonstrate any error in the trial court's decision to retain Davis on the jury. Accordingly, we overrule Taylor's second point of error.

8

**IV.    Taylor Was Not Entitled to an Instruction on the Defense of Insanity**

Last, Taylor argues that the trial court erred in rejecting his request to include an instruction on the defense of insanity because evidence established that he "is intellectually disabled and functions as a minor child." "We review claims of jury charge error under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)." *Graves v. State*, 452 S.W.3d 907, 910 (Tex. App.—Texarkana 2014, pet. ref'd). "We first determine whether error exists." *Id*. (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). "If error exists, we then evaluate the harm caused by that error." *Id*. "If there is no error, our analysis ends." *Id*. (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

"It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2011). "A defendant is entitled to an instruction on [a defensive issue] if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) (citations omitted). We review the evidence in the light most favorable to the defendant to determine whether a defensive issue should have been submitted. *Id.*

At his trial, Taylor introduced testimony from Carole Idom, a special education teacher at McLeod Independent School District. Idom testified that Taylor was mentally retarded, had a combined intelligence quotient of below seventy, and was her student from kindergarten through eighth grade. Idom's review of Taylor's records revealed that he attended regular classes in high

9

school, but with heavy modifications to the curriculum. Idom opined that Taylor functioned on a third- or fourth-grade level when he was graduated from high school fourteen years ago. She added that she could only speak to Taylor's academic functioning, not his ability to "operate[] in life."

Taylor's mother also testified that Taylor was mentally retarded as a result of brain damage from electrocution he had suffered when he was six years old. She claimed that Taylor functioned like a child, but was unable to speak to whether he was capable of controlling his sexual impulses and behavior. After hearing this evidence, the trial court concluded that Taylor presented insufficient evidence to raise a fact question on the defense of insanity and rejected his proposed instruction.

"Defendants are presumed to be sane[,] and the State carries no burden to prove sanity." *Lantrip v. State*, 336 S.W.3d 343, 346 (Tex. App.—Texarkana 2011, no pet.) (citing *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987)). To successfully assert the affirmative defense of insanity, a criminal defendant must prove "that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." *Id.* (quoting TEX. PENAL CODE ANN. § 8.01(a) (Vernon 2003)). Taylor introduced evidence of mental retardation, an intelligence quotient of less than seventy, and special education schooling. Yet, "[e]vidence of mental disease or defect does not, standing alone, equate to evidence of insanity." *Kelly v. State*, 195 S.W.3d 753, 756 (Tex. App.—Waco 2006, pet. ref'd). Furthermore, "evidence of lay witnesses, who never undertook to express a conclusion or opinion on insanity, [i]s not sufficient to raise the issue." *Id.* (citing *Pacheco v. State*, 757 S.W.2d 729, 735 (Tex. Crim. App.

10

1988)).  Here, Taylor presented no evidence that his mental condition prevented him from knowing that his conduct was wrong at the time of the offense.[7]

We find that the trial court correctly ruled that Taylor's evidence was insufficient to create a fact issue on the defense of insanity.  Accordingly, we overrule Taylor's last point of error.

## V.  Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     July 23, 2018
Date Decided:       July 31, 2018

Publish

---

[7]In fact, Taylor's text message exchanges with Cindy and Sartor's testimony established the opposite.

11