

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00017-CR
_____


JACOB DEWAYNE MURRAY, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1755471R


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Tarrant County jury convicted Jacob Dewayne Murray of two counts of aggravated sexual assault and assessed a seventy-five-year sentence on each count. *See* TEX. PENAL CODE ANN. § 22.021. On appeal from these convictions, Murray argues that (1) the trial court failed to consider his pretrial pro se motions, (2) jury-charge error resulted in egregious harm, (3) the trial court erred by allowing the State to cross-examine Murray about the substance of text messages that were not admitted into evidence, and (4) the trial court erred by allowing evidence of Murray's juvenile offenses.[1]

We find that the trial court was not required to consider Murray's pro se motions, there was no jury-charge error, and Murray failed to preserve his last two points of error for our review. As a result, we affirm the trial court's judgment.

## I. Factual Background

The victim in this case was Ashley Moreno, a thirty-four-year-old, "high-end," adult entertainer known as "Ms. Money," who became popular in the nightlife industry because of her television show that promoted "upcoming artists in the industry, rappers, DJs, promoters," and other entertainers. Moreno also promoted herself on social media and worked at several venues, including Temptations Cabaret, Zona Rosa, and Pandoras. Moreno explained that she often "pregame[d]" with customers at bars or other public settings before "draw[ing] them into the club after."

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Second Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

Moreno said that she met Murray through her work and mutual friends, that Murray became a customer, and that she had met with him while "pregaming" several times in public. On the night before the incident, Murray informed Moreno that he was coming to town and had a hotel room "close to where [Moreno] stayed." Moreno testified that she decided to stop by Murray's hotel before work to put on her makeup, "smoke a blunt," and take Murray to the club. Because she had spent time with Murray before, she was unconcerned about her safety as she approached his hotel room wearing "granny panties and a sports bra and no makeup."

Moreno testified that, as soon as she entered Murray's hotel room, he started "coming at [her] with a hammer." Moreno said Murry hit her in the face with a hammer three times, causing her to bleed profusely and to "hysterically scream." Moreno testified that Murray began choking her and "was saying that it was hard to snap [her] neck . . . he was trying to turn [her] neck to snap it, and he was just saying that it was hard." According to Moreno, Murray threatened to kill her if she kept screaming. Because she thought she was going to die, Moreno pled for her life and said she would do anything if Murray spared her.

Moreno testified that Murray retrieved a towel to soak up the blood streaming down her face, pulled her pants down, "bent [her] over," and raped her while threatening to kill her. According to Moreno, after the assault, Murray said she "was lucky because the last girl didn't make it." Moreno said Murray walked her to the car, encouraged her to go to a hospital to treat her injuries, and left the scene in his red truck. Moreno watched Murray drive off, got out of her car, ran into the hotel lobby, and cried for hotel employees to call the police.

3

Laura Hernandez, an officer with the City of Arlington Police Department (APD), testified that she was dispatched to the hotel and found Moreno in the hotel lobby, crying with bruises and blood streaming from her face. Hernandez's body-camera footage taken in the lobby showed Moreno's visible injuries and her demeanor, which Hernandez described as "very distraught, hyperventilating, [and] clearly [showing Moreno] had been through some kind of trauma." Moreno was taken to a hospital by ambulance. A patient care report and a sexual assault examination report containing Moreno's account of the assault and rape were admitted into evidence. Moreno showed the jury the scars from her extensive facial injuries, which required stiches.

Becky Szatkowski, a detective with the APD, testified that she found bloody sheets and a bloody towel bearing Moreno's DNA in the hotel room. Robin Kasson, a crime scene investigator with the APD, took photographs of Murray's hotel room and collected evidence, including a broken condom. Szatkowski testified that DNA analysis of semen found on the broken condom and vaginal swabs taken during Moreno's sexual assault examination revealed Murray as a contributor. Szatkowski testified that Murray was arrested and that a search of his red truck uncovered the hammer that Moreno said was used during the incident. During his interview with Szatkowski, which was admitted into evidence, Murray was provided a copy of the search warrant for his vehicle and was given the opportunity to read it. Immediately thereafter, Murray asked Szatkowski if he was still being recorded, and he then proceeded to look directly into the camera and make the following unsolicited statement:

> Nobody was ever supposed to get hurt. It was . . . It was a stupid
> idea. Uh, I was a young kid, I am a young kid. Uhm, I thought it

would be fun, and hilarious, and a funny story to tell in twenty years to my friends to say that I had sex with a stripper, a prostitute, and I ran off without paying her. That's all.

Murray testified in his defense at trial. While he admitted to assaulting Moreno, Murry denied sexually assaulting her. According to Murray, Moreno had agreed to meet him to have sex in exchange for $1,000.00. Murray testified that Moreno arrived at the hotel and that they both smoked a marihuana blunt before having consensual sex. According to Murray, Moreno had requested that he choke and slap her during sex. After the act, Murray said that Moreno went to the bathroom while he hurriedly dressed so he could leave without paying her. Murray said that Moreno caught him trying to leave and tried to wrestle his tool bag away from him. Murray admitted that, at that point, he hit Moreno with the tool belt and hammer and choked her. Because his actions went beyond self-defense, Murray admitted that he assaulted Moreno but maintained that their sex was consensual. In support of his account, Murray emphasized that he had grabbed a towel to aid Moreno and encouraged her to go to the hospital.

When asked if the evidence was consistent with an assault occurring after consensual sex, Szatkowski testified, "There was nothing presented to me that leads me to believe that." After hearing all of the evidence, the jury found that Murray had committed two counts of aggravated sexual assault.

## II.    The Trial Court Was Not Required to Consider Pro Se Motions

Because he was indigent, the trial court appointed counsel for Murray. After counsel was appointed, Murray filed several pro se motions, including motions seeking discovery, a bail

5

reduction, dismissal of the charges, and new counsel. In his first point of error, Murray argues that the trial court erred by failing to address the substance of his pro se motions. We disagree.

"[A] defendant has no right to hybrid representation." *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). "[A]s a consequence, a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel." *Id.* "[A] trial court's decision *not* to rule on a *pro se* motion . . . [is] not . . . subject to review." *Id.*

Because Murray was not entitled to hybrid representation, we find no error in the trial court's decision to refrain from ruling on his pro se motions. *See id.*; *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (en banc); *Pickett v. State*, No. 02-19-00090-CR, 2020 WL 2073733, at *1 n.3 (Tex. App.—Fort Worth Apr. 30, 2020, pet. ref'd) (per curiam) (mem. op., not designated for publication) (finding that courts may ignore pro se motions when a defendant has appointed counsel); *Ragsdale v. State*, No. 02-17-00340-CR, 2019 WL 2454862, at *2 n.1 (Tex. App.—Fort Worth June 13, 2019, no pet.) (mem. op., not designated for publication) (same). Consequently, we overrule Murray's first point of error.[2]

---

[2]Murray argues that he was harmed by the trial court's failure to rule on his pro se motions because "[h]ad the Trial Court taken action, either trial counsel would have been more effective in his representations of Murray." To the extent this argument can somehow be read to raise a claim of ineffective assistance, we find it inadequately briefed. "To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). "To avoid forfeiture, a party must provide substantive analysis by applying the law to the facts." *Id.* "A brief that fails to apply the law to the facts does not comply with Rule 38.1 and presents nothing for review." *Id.* (citing *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex. Crim. App. 2003)). Here, Murray fails to apply the relevant *Strickland* standard used to evaluate ineffective assistance claims. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (To show ineffective assistance, a defendant must prove (1) that his trial "counsel's performance was deficient" and (2) that "the deficient performance prejudiced [him].").

**III.    There Was No Jury-Charge Error**

In his second point of error, Murray argues that the jury charge was erroneous because it gave the jury no option to acquit him. Specifically, he argues that, "[i]f the jury believed the assaults occurred as Murray claimed, then the jury instructions forced them to find him guilty of sexual assault anyway." We disagree.

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* Here, we find no jury-charge error.

> During his opening, Murray argued the following:
>
> The evidence in this case is going to show that on January 17th, 2021, Mr. Murray had an agreement with the alleged victim in this case to meet up in a motel room and have sex for money.
>
> The sexual acts occurred, and Mr. Murray didn't have enough money to pay her. Once he didn't have enough money to pay her, they began to fight. And in the fight, Mr. Murray beat up the victim. That's what this case is about.

Murry testified that sex with Moreno was consensual.

Our review of the jury charge shows that the jury was given the option to acquit Murray if it believed his account. As a result, Murray is mistaken in arguing that the jury had to find him guilty even if it believed that Moreno was only assaulted after engaging in consensual sex. This is because the trial court's jury charge properly charged the jury in the following manner:

> A person commits the offense of aggravated sexual assault if the person either intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent, or causes the sexual organ of another person, without that person's consent, to contact the mouth or

7

sexual organ of another person, including the actor; and the actor either by acts or words places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, or uses or exhibits a deadly weapon in the course of the same criminal episode.

A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force, violence, or coercion.

Murray suggests that the charge's language focusing on use of a deadly weapon in the same criminal episode implies that the jury was forced to reject his theory. Yet, to convict Murray, the jury first had to find that sex with Moreno was not consensual *and* that a deadly weapon was used in the same criminal episode. The same finding was required by the application paragraphs of the jury charge.[3] As a result, the jury would not be permitted to find

---

[3]The application paragraphs stated,

> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt, that the defendant, Jacob Dewayne Murray, in Tarrant County, Texas, on or about January 17, 2021, did intentionally or knowingly cause the penis of the defendant to contact or penetrate the female sexual organ of [Moreno] without the consent of [Moreno], and that the defendant compelled [Moreno] to submit or participate by the use of physical force, violence, or coercion; and that the defendant by words or acts placed [Moreno] in fear that death, serious bodily injury, or kidnapping would be imminently inflicted on any person, as charged in Count One, Paragraph One of the indictment; or if you find and believe from the evidence beyond a reasonable doubt, that the defendant, Jacob Dewayne Murray, in Tarrant County, Texas, on or about January 17, 2021, did intentionally or knowingly cause the penis of the defendant to contact or penetrate the female sexual organ of [Moreno] without the consent of [Moreno], and that the defendant compelled [Moreno] to submit or participate by the use of physical force, violence, or coercion; and that the defendant used or exhibited a deadly weapon, namely, a hammer or a ligature, in the course of the same criminal episode, as charged in Count One, Paragraph Two of the indictment, then you will find the defendant guilty of aggravated sexual assault as charged in Count One of the indictment.

> . . . .

> Now, therefore, if you find and believe from the evidence beyond a reasonable doubt, that the defendant, Jacob Dewayne Murray, in Tarrant County, Texas, on or about January 17, 2021, did intentionally or knowingly cause the mouth of the defendant to contact the female sexual organ of [Moreno] without the consent of [Moreno], and that the defendant compelled [Moreno] to submit or participate by the use of physical force, violence, or coercion, and that the defendant by words or acts placed [Moreno] in fear that death, serious bodily injury, or kidnapping

Murray guilty if it believed sex with Moreno was consensual, even if it believed that a deadly weapon was used during the same criminal episode. Consequently, we find no error in the trial court's jury charge. We overrule Murray's second point of error.

## IV. Murray Failed to Preserve His Third Point of Error

In his third point of error, Murray argues that the trial court "erred in allowing [the] State to cross-examine Murray based on a text message that was admitted into the evidence for record purposes only." We find this issue unpreserved.

"To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court." *Donovan v. State*, 508 S.W.3d 351, 355 (Tex. App.—Fort Worth 2014), *aff'd*, No. PD-0474-14, 2015 WL 4040599 (Tex. Crim. App. July 1, 2015) (citing Tex. R. App. P. 33.1(a)). Moreover, "it has been consistently held that one must object each and every time inadmissible evidence is offered" unless a running objection is obtained. *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.— Texarkana 2000, pet. ref'd) (citing *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991)).

Here, the record shows that Murray did not make a timely, specific objection to the State's cross-examination. Szatkowski testified that she collected Murray's tablet and obtained a

would be imminently inflicted on any person, as charged in Count Two, Paragraph One of the indictment; or if you find from the evidence beyond a reasonable doubt, that the defendant, Jacob Dewayne Murray, in Tarrant County, Texas, on or about January 17, 2021, did intentionally or knowingly cause the mouth of the defendant to contact the female sexual organ of [Moreno] without the consent of [Moreno], and that the defendant compelled [Moreno] to submit or participate by the use of physical force, violence, or coercion, and that the defendant used or exhibited a deadly weapon, namely, a hammer or a ligature, in the course of the same criminal episode, as charged in Count Two, Paragraph Two of the indictment, then you will find the defendant guilty of aggravated sexual assault as charged in Count Two of the Indictment.

warrant to search the data it contained. When the State introduced messages obtained from Murray's tablet, Murray objected to the admissibility of the messages on several grounds. As a result, the State withdrew its offer, and the tablet messages were admitted only for record purposes and kept away from the jury's view. Even so, Murray stated:

> [BY THE DEFENSE]: Well, Your Honor, if they are going to get to read from it, I request that they be instructed to do it the proper way, which is to give him a chance to say what it is and explain it without his reading from it, and do it in the proper way -- [4]

> THE COURT: I will let you make the objections as she asks the question. Of course, if she asks an improper question, you can certainly object.

After taking a lunch break, the court stated that it "intend[ed] to allow the state to inquire" about Murray's relationship with other women, including Sammie Lex and a woman named Holly. Yet, the record does not show that Murray objected to that line of questioning if the State did "it in the proper way."[5] In fact, Murray told the trial court that the State could "ask whatever they want[ed]" but that the text messages were not admissible. Murray also argued, "[r]eading the text messages, it's just not proper, and it's prejudicial and it's the wrong way to go about proving this if you want to prove it."

When the State resumed Murray's questioning, the following transpired:

> Q. [BY THE STATE]: Mr. Murray, when we left off, I asked you: Who is Sammie Lex?

> A. I don't know a Sammie Lex.

---

[4] *See* TEX. R. EVID. 612.

[5] "The law of invited error provides that a party cannot take advantage of an error that it invited or caused." *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011); *see Parnell v. State*, No. 02-19-00070-CR, 2020 WL 5666565, at *5 (Tex. App.—Fort Worth Sept. 24, 2020, pet. ref'd) (mem. op., not designated for publication).

. . . .

Q.      And what was your relationship with Holly?

A.      We would hang out together every now and then, smoke weed, have sex on occasion.

Q.      So your relationship was sexual in nature?

A.      Yes, ma'am.

Q.      Do you recall her crying during one of those sexual encounters?

A.      No, ma'am.

Q.      Do you remember her begging you to stop during one of those sexual encounters?

A.      No, ma'am.

Q.      Is that a no?

A.      No.

Q.      Is it safe to say that there was a dispute as to consent after one of your sexual encounters?

[BY THE DEFENSE]:   Your Honor, I object to that question.  That was not one of the questions that we covered.

THE COURT:  Sustained.  Please rephrase.

[BY THE DEFENSE]:  Ask the jury to disregard, Your Honor.

THE COURT:  The jury will disregard the last question.

[BY THE DEFENSE]:  Move for a mistrial.

THE COURT:  Denied.

Q.      (BY [THE STATE]) Did y'all have discussions about whether or not the encounter was consensual?

A.     Yes, ma'am.

Q.     Did y'all disagree?

A.     No, ma'am -- or yes, ma'am, we did disagree.

Q.     So you did have a disagreement about whether it was consensual?

A.     Through text message, yes, ma'am.[6]

[BY THE STATE]: I'll pass the witness, Judge.

Here, Murray objected to the State's introduction of or reading from the text messages. Even so, Murray did not make a specific objection with respect to the State's ability to cross-examine Murray about his relationship with Lex or Holly if the State did not read from the text messages. As a result, "[t]he only adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial. Under those circumstances, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion." *McBurnett v. State*, 629 S.W.3d 660, 664 (Tex. App.—Fort Worth 2021, pet. ref'd) (quoting *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) (footnotes omitted)). However, Murray does not raise this issue on appeal. Instead, he complains that the trial court allowed the State's questioning, but the record shows that Murray (1) did not specifically object to the State's ability to generally cross-examine Murray and (2) did not raise an objection at trial to the portion of Murray's cross-examination showing that Murray had a disagreement through text message

---

[6]"[A]n error [(if any)] in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Cain v. State*, 621 S.W.3d 75, 87 n.16 (Tex. App.—Fort Worth 2021, pet. ref'd) (quoting *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004)).

12

about whether sex with Holly was consensual. We find Murray's third point of error unpreserved and overrule it.[7]

## V.  Murray Failed to Preserve His Last Point of Error

In his last point of error, Murray argues that the trial court erred by admitting evidence of his juvenile bad acts and offenses without first subjecting those bad acts and offenses to a Rule 403 balancing. The State argues that Murray failed to preserve this point of error for our review. We agree with the State.

During punishment, the State sought to introduce extraneous-offense evidence and bad acts committed by Murray as a juvenile. As shown by the following portion of transcript, Murray's complaint at trial failed to raise Rule 403 grounds as a basis to exclude his juvenile offenses:

> [BY DEFENSE COUNSEL]: The State intends to offer State's Exhibit[s] 79, 80 and 86[,] . . . . [w]hich are records of Mr. Murray when he was a juvenile. For the purpose of this hearing only, I will stipulate that 79, 80 and 86 are the records of Jacob Murray, the defendant in this case.

> And outside the presence of the jury, I would object to them being admissible because they are juvenile records.

> THE COURT: Okay. What's the response from the state?

> [BY THE STATE]: Judge, it's punishment. Everything is relevant.

> THE COURT: [Defense Counsel], is there anything you want me to look at? I tend to agree with the state. Is there something I'm missing statutorily or is there some case law I'm unaware of?

---

[7]Moreover, "[t]he scope of cross-examination is wide open, and once the defendant testifies at trial, he opens himself up to questioning by the prosecutor on any subject matter that is relevant." *Temple v. State*, 342 S.W.3d 572, 593 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013) (quoting *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). This includes cross-examination on "uncharged extraneous conduct." *Kos v. State*, 15 S.W.3d 633, 643 (Tex. App.—Dallas 2000, pet. ref'd).

[BY DEFENSE COUNSEL]: I understand the state's and the Court's position on this matter, Your Honor. However, I'm objecting to 79, 80 and 86 because they are Mr. Murray's juvenile records.

THE COURT: Okay. And I'm just asking is there any -- any authority you have that you want to point me to?

[BY DEFENSE COUNSEL]: No, sir.

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005). As stated in *Resendez v. State*, 306 S.W.3d 308 (Tex. Crim. App. 2009),

> Rule 33.1(a) of the Texas Rules of Appellate Procedure provides that a complaint is not preserved for appeal unless it was made to the trial court "by a timely request, objection or motion" that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."

*Id.* at 312 (quoting TEX. R. APP. P. 33.1(a)(1)(A)).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Id.* As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

14

Here, although Murray generally objected to the admission of his juvenile records, he failed to urge Rule 403 as a basis for exclusion. As a result, Murray's trial objection does not comport with his appellate argument. Because the trial court was not apprised of any Rule 403 argument, we find that Murray has failed to preserve his last point of error for our review. It is overruled.

## VI. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: July 19, 2023
Date Decided: August 18, 2023

Do Not Publish