

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00033-CR

RICKEY DOYLE LAMPRECHT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-20-27590

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

A Fannin County jury convicted Rickey Doyle Lamprecht of delivering methamphetamine to a confidential informant in a drug-free zone. After the jury found the State's punishment enhancement allegation true, it assessed a sentence of six and one-half years' imprisonment. On appeal, Lamprecht argues that the trial court "improperly coerced the Defendant to waive his privilege to testify in his defense." He also argues that the trial court erred by admitting Lamprecht's swastika tattoo for purposes of identifying him as the person who delivered methamphetamine on the confidential informant's poorly filmed recording of the drug transaction.

We find that Lamprecht has failed to preserve his first point of error. We also find that the trial court did not abuse its discretion by admitting Lamprecht's tattoo for purposes of identifying him as the perpetrator of the crime. As a result, we affirm the trial court's judgment.

## I. Lamprecht Has Failed to Preserve His First Point of Error

In his first point of error, Lamprecht argues that the trial court coerced him to waive his privilege to testify or, in other words, coerced him to remain silent. He complains of the following portion of transcript, which began with his counsel's admonishments, followed by the trial court's explanation:

> [DEFENSE COUNSEL]: Mr. Lamprecht, . . . you and I have met several times, and I told you if you want to testify, you can, you understand?
>
> THE DEFENDANT: Yes, sir.
>
> [DEFENSE COUNSEL]: Now is the time to make that decision. I've discussed the pros and cons of whether you should or should not testify. It's

my -- my personal opinion, but that's it, that you should not testify. What is your decision today?

. . . .

THE DEFENDANT: Yes. Yes, I could. Yes.

[DEFENSE COUNSEL]: Well, what I'm telling you is I don't think it's a good idea that you testify. But if you want to get up there and tell your story, you can do it. That is your right. You're the only one that can decide whether you should testify or not. And as part of me discussing the pros and cons, if you choose to testify, some of your prior crimes and bad acts will come into evidence, right? So right now, the jury doesn't get to hear about all of that. But if you choose to testify . . . a lot of your prior crimes and bad acts and other extraneous offenses that have not been admitted will come into evidence, and the jury will be able to consider that --

THE DEFENDANT: Yeah, I understand that.

[DEFENSE COUNSEL]: -- and use that potentially against you. For those reasons, I've told you that it's my humble opinion that you should not testify. Do you want to testify?

THE DEFENDANT: No, not really.

[DEFENSE COUNSEL]: Okay.

. . . .

[DEFENSE COUNSEL]: And I would concur with that. I think that's in your best interests. . . .

THE DEFENDANT: Yeah, past crimes and everything, I've already been convicted or something, done time for it, I don't think it's fair for them to bring that up and do that to me like that 'cause I've already paid for that deal, you know. For what I have here, I've already got my statement wrote down for my lawyer, and he could present that --

. . . .

THE COURT: Well, but that would be considered testimony, so if -- if you have anything that you're putting in writing or using your words, either

one, the State has a right to cross-examine you if you want to put your statement forward, even if you submit it through writing.

THE DEFENDANT:  Oh, yes, ma'am.

THE COURT:  It doesn't change their access to cross-examination, and it doesn't change that there's an ability to use impeachment evidence.

THE DEFENDANT:  Yes, ma'am.  Okay.  I really wish not to.

THE COURT:  Okay.  And I'm not trying to talk you into it.

THE DEFENDANT:  Okay.

THE COURT:  I just want to make sure you understand --

. . . .

THE COURT:  . . . that either what you want to say comes in because it's brought in and --

. . . .

THE COURT:  -- the State gets to cross-examine --

. . . .

THE COURT:  -- or you don't have any of it come in.

THE DEFENDANT:  Yeah.

THE COURT:  And that's okay.  It's your choice.

THE DEFENDANT:  All right.  Yes, ma'am.  Yes, Your Honor.

THE COURT:  So -- so do you want to testify . . . ?

THE DEFENDANT:  No.

Lamprecht claims in his brief that the trial court's comments amounted to duress and coercion, which prevented him from testifying.  Yet, at no point did Lamprecht raise this

4

argument with the trial court. "As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a). We overrule Lamprecht's first point of error because he failed to preserve it for our review.[1]

---

[1]Moreover, "[t]o avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain '. . . appropriate citations to authorities.'" *Taylor v. State*, 558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) (citing TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)). In support of his argument, Lamprecht cites to *Webb v. State*, 409 U.S. 95 (1972) (per curiam). There, when Webb called his only witness—a man who had a prior criminal record and was serving a prison sentence—to testify, the trial court made the following statements:

> "Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking."

*Id.* at 95–96. Unlike Lamprecht, Webb's counsel objected to the trial court's statements "on the ground that the judge was exerting on the mind of the witness such duress that the witness could not freely and voluntarily decide whether . . . to testify in [Webb's] behalf, and was thereby depriving [Webb] of his defense by coercing the only defense witness into refusing to testify." *Id.* at 96. When Webb's counsel indicated that he still planned "to ask the witness to take the stand, the judge interrupted: 'Counsel, you can state the facts, nobody is going to dispute it. Let him decline to testify.'" *Id.* The witness refused to testify, and the issue was again raised in a motion for new trial. *Id.* Under those circumstances, the United States Supreme Court concluded "that the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98. Lamprecht fails to explain in his brief how the trial court's comments, here, which contained no mention of perjury, amounted to the duress and coercion seen in *Webb*. Because *Webb* is inapposite, Lamprecht's authority cited in his brief is not an appropriate citation.

## II.     The Trial Court Did Not Abuse Its Discretion by Admitting the Tattoo

The record showed that the identity of the person who delivered the drugs on the confidential informant's recording was fully at issue. The recording was shaky, dark, and did not clearly reveal the faces of several people who were in the room during the time of the delivery. During opening statement, Lamprecht's counsel argued that the drugs did not belong to Lamprecht, who was just "a user sitting in a house with other users." Counsel commented on the "poor video and poor CI work" and said, "[T]he State wants you to pin the tail on the wrong donkey."

Despite the quality of the recording, it showed that the person who delivered the methamphetamine had a swastika tattoo on the left side of his chest. As a result, the State asked the trial court to compel Lamprecht to reveal the left side of his chest, which had the same swastika tattoo, to the jury. The trial court granted the State's request over Lamprecht's Rule 403 objection. Lamprecht argues that the trial court erred by admitting the "highly prejudicial" tattoo.

### A.     Standard of Review

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v.*

6

*State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

## B. The Rule 403 Balancing Factors

Rule 403 of the Texas Rules of Evidence provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." TEX. R. EVID. 403. "To violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). "Unfair prejudice occurs when the evidence has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)). When conducting a Rule 403 balancing test, the court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together in practice." *Id.* at 642.

## C. Analysis

As for the first two factors, Lamprecht's tattoo was highly probative of the identity of the person who delivered the drugs to the confidential informant. Because of the poor quality of the

recording of the drug transaction, Lamprecht argued that identity was an issue during opening statement and throughout the trial. As a result, the State's need for the evidence was high. We find that the first two factors weighed heavily in favor of admitting evidence of the tattoo on Lamprecht's chest.

The third factor looks to the tendency of the evidence to suggest a decision on an improper basis. Here, an improper basis would be an attempt to show that, because of his racially charged tattoo, Lamprecht was a bad person and acted in conformity with that character when delivering the drugs. However, that was not the State's purpose in eliciting the evidence and, as a result, we do conclude that this factor weighed heavily against admission of the tattoo. *See McCallum v. State*, 311 S.W.3d 9, 15–16 (Tex. App.—San Antonio 2010, no pet.).

As for the fourth factor, while we recognize the inherently inflammatory nature of Lamprecht's swastika tattoo, we find that there was little tendency for it to confuse or distract the jury from the main issues at trial because it was admitted for the purpose of proving identity, which was a main issue at trial. Further, the trial court's charge properly directed the jury to the elements of the offense it was to consider. For purposes of our analysis, we find this factor neutral.

"The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence." *Price v. State*, 594 S.W.3d 674, 681 (Tex. App.—Texarkana 2019, no pet.) (citing *Gigliobianco*, 210 S.W.3d at 641). Here, neither scientific nor technical matters were involved. *See id.*

8

Last, Lamprecht's revelation of his tattoo did not consume an inordinate amount of time or merely repeat evidence already admitted. Instead, the record showed that Lamprecht briefly revealed his tattoo to the jury within a lengthy, multi-day trial. We find that the last Rule 403 balancing factor favored admission.

We conclude that the trial court, after balancing the Rule 403 factors, could have reasonably concluded that the probative value of Lamprecht's tattoo was not substantially outweighed by the danger of unfair prejudice. Consequently, we find that the trial court did not abuse its discretion by admitting it. We overrule Lamprecht's last point of error.

## III. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     October 2, 2023
Date Decided:       October 3, 2023

Do Not Publish

9