

# NUMBER 13-23-00590-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICHARD RIOS,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF DEWITT COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña**
**Memorandum Opinion by Justice Tijerina**

A jury found appellant Richard Rios guilty of possession of less than one gram of methamphetamine, a state jail felony, and evading arrest with a vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2)(A); TEX. HEALTH & SAFETY CODE ANN. § 481.115(b). The jury assessed punishment at two years' and five years' imprisonment, respectively, and the sentences were ordered to run concurrently. By three issues, Rios

argues the evidence was insufficient to support the jury's verdict and the trial court improperly assessed court costs and restitution without a hearing. We affirm.

## I.  BACKGROUND

During trial, Sergeant Jimmy Cockroft with the Goliad County Sheriff's Office testified that on May 5, 2020, he was employed as a peace officer in DeWitt County. Cockroft was patrolling an area that "he had served a narcotics search warrant on . . . a few weeks prior." Cockroft had prior knowledge that appellant had a suspended driver's license and expired registration. He noticed appellant leaving the location he had served the warrant on. Cockroft ran the license plate on appellant's motorcycle. After confirming the plates belonged to appellant, he conducted a traffic stop.

According to Cockroft, appellant "wasn't acting like he was normally." While appellant "normally is very compliant," this time appellant "stepped back away from the motorcycle," and "started wa[]ving his arms." When Cockroft attempted to place appellant in handcuffs, appellant "moved away . . . got on the motorcycle and rode off." Cockroft testified that appellant had "something in his right hand that looked appeared [sic] to be a baggie or a paper towel and he couldn't manipulate the throttle on the motorcycle and throw the contents in his hand] at the same time. So he had it in his hand."

Cockroft's dashcam video was submitted into evidence. In the video, as Cockroft approached appellant, appellant can be seen waving his arms in the air. Appellant admitted to Cockroft that his registration is expired and that he does not have a driver's license. Cockroft explained to appellant that he is "always catching him with expired registration and no driver's license," which appellant replied, "I know."

2

A black backpack can be seen tightly secured with rope to the back of appellant's motorcycle. Cockroft asked if appellant had any problems with him searching appellant's backpack or motorcycle, and appellant confirmed that he did because "he's been harassed too many times already." Cockroft then informed appellant that he would be placed under arrest for not having a driver's license and attempted to arrest appellant. Appellant then stated, "why, why, why, don't, don't don't"; pulled his arm back; stated he was leaving; got on his motorcycle; and sped away. Cockroft turned on the lights and sirens of his patrol vehicle and pursued appellant. When appellant arrived at his mother's residence, he dropped what he had in his hand, which looked to be a paper towel or a baggie. Appellant attempted to walk inside the home. Cockroft deployed his taser; appellant fell to the ground and was arrested. Cockroft testified that on the motorcycle, he discovered "what appeared to be a baggie in a paper towel" with a crystal-like substance, "syringes that were loaded," "a baggie tied to the motorcycle handle bars that had a syringe in it," a spoon, a cotton ball, and a broken pipe. The crystal-like substance later tested positive for methamphetamine.

Appellant testified that when Cockroft pulled him over, "he went straight to the backpack." According to appellant, Cockroft "grabbed that backpack right off the bike . . . And he went to search it . . . I had a problem with that . . . because you don't have a warrant to search nothing on this bike." Appellant stated that Cockroft went back to his patrol unit when appellant "got on the bike and told him I was leaving." Appellant explained he thought the encounter was over because Cockroft did not ask for a driver's license or anything else. Appellant stated he "rode off," "did the speed limit," and "just

3

[wanted] to go leave that bike" at his mother's house. Appellant testified, "The officers went and rammed this bike with the [patrol unit]. The motorcycle was halfway under the vehicle. Knocked me over. That's when I attempted to get up where you see my mother in the way right there." Appellant stated he attempted to get back up "after [Cockroft] hit the vehicle with the motorcycle." He added that he "had to push [his] mom to the side in order for that taser not to hit her."

Appellant testified that the drugs Cockroft discovered were not his, explaining that he had just "bought that bike days before and I was moving it from one place to another." Specifically, he stated that when he bought the bike, the backpack was already on there. The jury convicted appellant and sentenced him as stated above. This appeal followed.

## II.    LEGAL SUFFICIENCY

### A.    Standard of Review

Evidence is legally sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 732 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 731–32. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)).

4

Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. See *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. *Id.* at 15. Further, the jury is the sole judge of witness credibility and can believe all, some, or none of a witness' testimony. *See Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014).

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Under a hypothetically correct jury charge in this case, the State was required to prove beyond a reasonable doubt that appellant knowingly or intentionally possessed methamphetamine in the amount of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b). To establish possession of a controlled substance, "the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the [substance] possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). The State "must establish that the

5

defendant's connection with the drug was more than fortuitous," regardless of whether the evidence is direct or circumstantial. *Id.*

As the evading arrest count, the State was required to prove that appellant intentionally fled using a vehicle from a person appellant knows is a peace officer attempting lawfully to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04.

**B.    Discussion**

The entirety of appellant's argument in his brief as to his first issue is as follows: "[A] scintilla of evidence was not introduced by the State that the Appellant knowingly or intentionally possessed the methamphetamine. While circumstantial evidence can be evidence, insufficient of even that [sic] was presented." Appellant's brief fails to include any analysis, argument, or citation to the record in support of his contention that the evidence is insufficient to support his convictions. *See* TEX. R. APP. P. 38.1(i). He further fails to discuss how the evidence adduced at trial fails to satisfy the State's burden of proof. *See Taylor v. State*, 558 S.W.3d 215, 218–19 (Tex. App.—Texarkana 2018, no pet.). Appellant's conclusory argument presents nothing for our review as he does not provide substantive argument or analysis, nor does he direct this court to any record references supporting his general assertion that the evidence is insufficient. *See id.*

Nonetheless, we note that Cockroft testified that he was conducting surveillance on a house that he had previously executed a warrant on for dealing narcotics. He observed appellant leave that house on a motorcycle. Appellant was the registered owner of the motorcycle, was driving the motorcycle, and was the sole occupant. On the dashcam video, the jury was able to see a black backpack secured to appellant's

6

motorcycle with rope. *See Evans*, 202 S.W.3d at 161. Narcotics were recovered from the backpack, and appellant does not dispute this fact. Cockroft testified that he observed appellant fleeing from the traffic stop with a plastic baggie in his right hand, and he "couldn't manipulate the throttle on the motorcycle and throw that at the same time." This demonstrates that appellant "exercised control, management, or care over the substance." *Id.* Throughout the pursuit, Cockroft informed dispatch that appellant is "trying to throw the narcotics." This suggests that appellant not only possessed the narcotics but was aware of the illegality of it as well as the consequences of it being found in his possession. *See Uranga v. State*, 247 S.W.3d 375, 381 (Tex. App.—Texarkana 2008), *aff'd*, 330 S.W.3d 301 (Tex. Crim. App. 2010). Although appellant testified that the drugs and backpack were not his because he purchased the motorcycle only three days before this incident, the jury rejected appellant's testimony. It was the sole province of the jury to judge the credibility of these witnesses and the weight to give their testimony, and we afford almost complete deference to its determination. *Thomas*, 444 S.W.3d at 10. Viewing the evidence in the light most favorable to the jury's finding of guilt and based on the combined and cumulative force of the evidence, we conclude that a rational trier of fact could have found that appellant committed the charged offense of possession of methamphetamine beyond a reasonable doubt. *See Joe*, 663 S.W.3d at 732; *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b). We overrule his first issue.

By his second issue, appellant also argues that "a scintilla of evidence was not introduced by the State that Appellant fled from a person he knew was a peace officer" because "[a]s per the defendant's testimony, there was no intention to flee." Cockroft

7

informed appellant that he was under arrest for driving without a license. *See Griego v. State*, 345 S.W.3d 742, 755 (Tex. App.—Amarillo 2011, no pet.) ("[A]fter the officers ordered him to stop, appellant knew or should have known that the officers were attempting to arrest or detain him."). As Cockroft attempted to arrest appellant, appellant jerked his hand back, refused to be arrested, informed Cockroft that he was leaving, and drove away on a motorcyle. "[T]he evidence shows that the officers made a show of authority and that appellant refused to yield to it." *Id.* Accordingly, a rational juror could have reasonably concluded that appellant committed the offense of evading arrest notwithstanding appellant's testimony that he had no intention to flee the scene. We overrule his second issue.

### III. COURT COSTS

By his third issue, appellant argues that the trial court failed to comply with Article 42.15(a-1) of the Texas Code of Criminal Procedure because it did not hold a hearing before it assessed court costs and restitution.

### A. Applicable Law

Article 42.15(a-1) requires the trial court to ask on the record whether a defendant has the ability to immediately pay fines and costs. *See* TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1); *see also Suniga v. State*, No. 13-23-00586-CR, 2024 WL 3307314 (Tex. App.—Corpus Christi–Edinburg July 5, 2024, no pet. h.) (mem. op., not designated for publication). "A defendant may waive the requirement for the inquiry described by Subsection (a-1) to be on the record." TEX. CODE CRIM. PROC. ANN. art. 42.15(a-2).

**B.     Discussion**

In *Suniga*, we concluded that even if the trial court's failure to conduct an ability-to-pay inquiry was error and that appellant's failure to object did not waive his right to complain, that appellant failed to establish that he was harmed, and that remanding for an ability-to-pay inquiry on the record "would amount to an unnecessary exercise and waste of judicial resources." *See* TEX. R. APP. P. 44.2(b) (providing that non-constitutional error that does not affect the defendant's substantial rights must be disregarded); *Suniga*, 2024 WL 3307314, at *3. We found that because the trial court ordered the appellant to pay his court costs upon release from confinement, the trial court must have determined that appellant was indigent, and any remand for an ability-to-pay inquiry would be unnecessary. *See Suniga*, 2024 3307314, at *3. Therefore, appellant could not show he was harmed. *See id.*

Like *Suniga*, we conclude similarly here. The trial court ordered that appellant "pay all costs of court" and "that he pay the cost of his court[-]appointed attorneys." Trial counsel stated that appellant "has been found indigent" and requested that appellate counsel be provided. The judgment reflects that appellant was ordered to pay court costs in the amount of $290 and restitution in the amount of $45 "upon release of confinement."

Although there is no indication that the trial court conducted an ability-to-pay inquiry "on the record" as required by statute, the trial court's ability-to-pay inquiry could be implied from the record because its judgment required appellant to pay his court courts "upon release of confinement." *See* TEX. CODE CRIM. PROC. ANN. art. 45.15(a-1)(1) ("If the court determines that the defendant does not have sufficient resources or income to

9

immediately pay all or part of the fine and costs, the court shall determine whether the fine and costs should be . . . paid at some later date."). Thus, any remand for an "on the record" ability-to-pay inquiry would be "gratuitous." *Suniga*, 2024 WL 3307314, at *3 (citing *Sloan v. State*, 676 S.W.3d 240 (Tex. App.—Tyler 2023, no pet.)); *see also Sanders v. State*, No. 05-22-01376-CR, 2024 WL 725529, at *9 n.2 (Tex. App.—Dallas Feb. 22, 2024, no pet.) (mem. op., not designated for publication) (concluding that appellant failed to show his substantial rights were affected by the trial court's lack of an express ability-to-pay inquiry). Accordingly, we overrule appellant's third issue.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of August, 2024.

10